UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

ALLYSON GREENROYD,           )
                             )
        Plaintiff,           )
                             )
vs.                          )        Case No. CIV-25-1299-R
                             )
MICHELLE SHELTON, et al.,    )
                             )
        Defendants.          )

## ORDER

Before the Court are the Motions to Dismiss filed by Defendants Michelle Shelton, Christal Thompkins, Andrea Williams, Abigale Davis, and Cecil Boydston [Doc. Nos. 33, 34, 35, 36, 37]. Plaintiff Allyson Greenroyd, proceeding pro se, filed Responses [Doc. Nos. 38, 39, 40, 41, 42] and Defendants did not reply. The matter is now at issue.

## BACKGROUND[1]

This action arises from circumstances related to the juvenile deprived case of Plaintiff's great-niece, L.W., in the District Court of Stephens County, Oklahoma. Doc. No. 33, at pp. 9-10.[2] L.W. was born addicted to drugs on or around May 31, 2025, and on June 9, 2025, the Stephens County District Attorney's petition for emergency custody of

---

[1] When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "take[s] the facts in the complaint as true . . . and [ ] views such facts in the light most favorable to the plaintiff[.]" *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (internal citations and quotation marks omitted).

[2] While providing Plaintiff the full benefit of a liberal construction of her allegations and filings due to her pro se status, the Court relies on the facts alleged in Defendants' filings to fill the gaps left by the Amended Complaint [Doc. No. 30]. Plaintiff does not dispute Defendants' factual statements.

1

L.W. was granted. *Id.* The D.A. thereafter filed an allegedly ongoing juvenile deprived case concerning L.W. *Id.* at p. 10. L.W.'s biological parents identified Plaintiff as a preferred caregiver, and Defendant Michelle Shelton, a child welfare investigator for the Oklahoma Department of Human Services, contacted Plaintiff regarding the potential kinship placement of L.W with Plaintiff. Am. Compl., at pp. 1-2. Plaintiff agreed to a kinship evaluation. *Id.* at p. 2. Defendant Christal Thompkins, a DHS child welfare specialist, assessed Plaintiff's home on June 16, 2025. *Id.* at pp. 1-2. The following day, Thompkins verbally notified Plaintiff she would not receive placement of L.W. *Id.* at p. 2.

Plaintiff asserts that, in denying her consideration for the placement of L.W., Defendants Shelton, Thompkins, Andrea Williams (a DHS permanency worker), and Abigale Davis (a DHS supervisor) relied on the alleged criminal history of another occupant of Plaintiff's household. *Id.* at pp. 1-2. However, Plaintiff asserts Defendants improperly relied on (1) a criminal charge to which the other household member did not plead guilty and (2) an offense that fell outside the applicable five-year exclusion period. *Id.* at p. 2.

Plaintiff alleges that, prior to being excluded from placement consideration, she did not receive, amongst other procedural protections, written factual findings, written notice of denial, a written waiver eligibility notice, an administrative review procedure, or notice or opportunity to respond. *Id.* at pp. 2-3. She requested written documentation of the denial of her placement consideration between June 17 and September 22, 2025, but never received one. *Id.* She alleges a written denial was not generated or issued until September 23, 2025, the day before a scheduled court hearing. *Id.* at p. 3. Plaintiff asserts the timing

2

of the written denial deprived her of the chance to seek waiver review or to administratively appeal the denial prior to the hearing. *Id.* Nevertheless, the presiding judge at the hearing relied on the allegedly deficient denial when denying Plaintiff intervention and placement consideration. *Id.* Plaintiff communicated her concerns regarding the generation and presentation of the denial document, and asserts Defendant Cecil Boydston, the DHS District Director, acknowledged no written denial had been issued prior to September 22. *Id.* at pp. 1, 3. She asserts Boydston had authority to direct corrective action related to the denial prior to the hearing but failed to do so. *Id.* at p. 3.

Plaintiff filed this 42 U.S.C. § 1983 action against the five DHS Defendants in both their individual and official capacities, arguing some or all the Defendants violated her Fourteenth Amendment Procedural Due Process and First Amendment rights. Defendants move to dismiss each of her claims, either for lack of subject-matter jurisdiction or failure to state a claim.

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To hear a given case, a federal court must possess subject-matter jurisdiction. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) takes one of two forms: (1) a facial attack; or (2) a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction," whereas, "[a] factual attack goes beyond the allegations in the complaint and adduces evidence to contest

3

jurisdiction." *Id.* (citation omitted). Defendants' 12(b)(1) Motion takes the form of a facial attack because it assumes allegations in the Complaint are true and does not challenge the facts upon which subject-matter jurisdiction depends by offering evidence. *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). Thus, the Court accepts the allegations in the Complaint as true. *Id.*

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where, as here, a litigant is proceeding pro se, the "pleadings are to be construed liberally." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

## DISCUSSION

### I.  The Eleventh Amendment and *Younger* Abstention

Defendants argue Plaintiff's claims against them in their official capacities are essentially claims against the State of Oklahoma and its agency, DHS, and thus are jurisdictionally barred by the Eleventh Amendment. The Eleventh Amendment, with certain exceptions, prohibits citizens from filing suit against a state, an arm of the state, or a state official in her official capacity. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citations omitted) ("Suits against state officials in their official capacity [] should be treated as suits against the State. . . . [T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."). "DHS is an 'arm' of the State of Oklahoma." *Miller v. Okla. Dep't of Hum. Servs.*, No. CIV-22-507-D, 2022 WL 16541217, at *2 (Oct. 28, 2022) (citing *McKinney v. State of Okla., Dep't of Hum. Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)) (holding the Eleventh Amendment barred plaintiff from seeking monetary damages from DHS). Plaintiff does not dispute that her official capacity claims, to the extent they seek monetary damages, are barred by the Eleventh Amendment. Accordingly, to the extent Plaintiff asserts claims for monetary relief against the Defendants in their official capacities, such claims are DISMISSED for lack of subject-matter jurisdiction.[3]

---

[3] Defendants also assert Plaintiff's official capacity claims are subject to dismissal under Rule 12(b)(6) because the Defendants are not "persons" under § 1983. Section 1983 provides for a federal cause of action against *persons* who, under color of state law, deprive others of their federally protected rights. 42 U.S.C. § 1983. "But a [§ 1983] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

But Plaintiff also seeks prospective relief against Defendants in their official capacities, and argues such claims fall within the *Ex parte Young*, 209 U.S. 123 (1908) exception. "[U]nder the *Ex parte Young* doctrine, 'the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune.'" *Muscogee (Creek) Nation v. Okla. Tax. Comm'n*, No. 09-CV-285-TCK-TLW, 2009 WL 10695365, at *3 (N.D. Okla. Aug. 10, 2009) (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1286 (10th Cir. 1999)).[4] Defendants do not dispute or discuss the exception for prospective relief under the Eleventh Amendment. But even if this exception applies, *Younger* abstention doctrine dictates this Court should decline to consider *any* of Plaintiff's claims.

The *Younger* abstention doctrine "'provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'" *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (quoting *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669-70 (10th Cir. 2020)) (quotation marks omitted). However, the doctrine only applies when "the

---

(citation omitted). Thus, at least to the extent a plaintiff seeks money damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71, 71 n.10 (citations omitted). Plaintiff does not dispute that her official capacity claims, to the extent they seek monetary damages, fail because Defendants cannot be considered "persons" under § 1983 in that context. Thus, her claims against Defendants in their official capacities seeking monetary damages are also subject to dismissal under Rule 12(b)(6).

[4] *See also Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'").

state proceeding falls into one of the following [*Sprint*] categories: '(1) state criminal prosecutions, (2) civil enforcement proceedings that take on a quasi-criminal shape, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'" *Id.* (quoting *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023)); (also citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013)) (brackets omitted).

If the state proceeding falls into one of the *Sprint* categories outlined above, then a federal court must abstain from hearing the case when the following conditions are met:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (citation omitted). "When these conditions are met, the application of *Younger* is mandatory." *Morkel v. Davis*, 513 F. App'x 724, 727 (10th Cir. 2013) (unpublished) (citing *Weitzel v. Div. of Occupational & Pro. Licensing of the Dep't of Com.*, 240 F.3d 871, 875 (10th Cir. 2001)).

The state proceedings cited by Plaintiff—namely the juvenile deprived case involving the custody of J.W. (JD-25-4)—fit into a *Sprint* category. Specifically, the state juvenile deprived proceeding is "a 'pending civil proceeding[ ] involving' a domestic-relations proceeding that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Wright v. Okla. Cnty.*, No. CIV-20-346-JD, 2020 WL 8335672, at *8 (W.D. Okla. Aug. 31, 2020) (quoting *Sprint*, 571 U.S. at 78) (analyzing the *Sprint* categories and applying *Younger* to an on-going state divorce proceeding). And as noted

7

by then-Judge Neil Gorsuch in *Wyttenbach v. Parrish*, 496 F. App'x 796 (10th Cir. 2012) (unpublished), "[f]ederal courts have long disclaimed responsibility for domestic relations cases, leaving the power to issue and enforce 'divorce, alimony, and child custody decrees' to the states." *Wyttenbach*, 496 F. App'x at 796 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). The Tenth Circuit and "other circuits have consistently applied *Younger* to child custody cases." *Morkel*, 513 F. App'x at 728 (collecting cases). So the Court finds that the child custody proceeding forming the basis of Plaintiff's Complaint fits into a *Sprint* category sufficient to trigger a *Younger* analysis.

First, Defendant represents, and Plaintiff does not dispute, that the juvenile deprived case is ongoing in Stephens County. Second, Plaintiff has not alleged, and does not argue, that Oklahoma "state courts are an inadequate forum for raising her constitutional claims . . . . [Furthermore,] [s]tate courts are generally equally [as] capable of enforcing federal constitutional rights as federal courts." *Id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). Plaintiff bears the burden of establishing "state law prevents her from presenting her federal claims in the state proceedings," but she has failed to do so. *Id.* at 728-29 (citation omitted). In fact, she only states that *Younger* doesn't apply because she is asserting independent claims[5] for constitutional violations by the

---

[5] The Court questions this characterization. Plaintiff does not explicitly ask this Court to declare as void or improperly decided the state court's denial of consideration of Plaintiff for placement of L.W. However, Plaintiff does ask the Court to provide prospective injunctive relief in the form of written notice of kinship placement denials, a meaningful opportunity for administrative review prior to court reliance, prohibition of reliance upon materially inaccurate or unauthorized criminal history information, and correction of inaccurate records relied on in the denial of Plaintiff's consideration. This implicates the concern that, were the Court to afford Plaintiff her requested relief, Plaintiff could then

Defendants—not because state law prevents her from raising these issues or because Oklahoma state courts are incapable of hearing her claims. Finally, "the resolution of child custody matters has been acknowledged as an important state interest." *Id.* at 729 (citation omitted); *see also Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996) (citation and quotations omitted) (finding abstention was appropriate and stating "adoption and child custody proceedings are an especially delicate subject of state policy" and a "traditional area of state concern"). Because Plaintiff's claims focus on actions taken by DHS and other state and county entities affecting those proceedings, the final *Younger* condition is satisfied. Finding all three *Younger* conditions met, and no extraordinary circumstances present, the Court is required to abstain from hearing Plaintiff's claims to the extent the state-court proceedings are ongoing.

But even if *Younger* does not apply, Plaintiff's complaint fails to "include sufficient factual allegations to state a claim for" First or Fourteenth Amendment violations. *Abu-Fakher v. Bode*, 175 Fed. App'x 179, 181 (10th Cir. 2006) (unpublished).

## II.    Plaintiff's Claims Do Not Pass Rule 12(b)(6) Muster.

### a.    Fourteenth Amendment Procedural Due Process

Plaintiff alleges Oklahoma law and DHS policy establish a state-created entitlement to procedural safeguards governing kinship placement evaluations such as written notice of her denial for kinship consideration and its underlying factual basis, waiver eligibility

---

"take [her] federal judgment to the state court and attempt to enjoin, interfere with, or use the judgment for its purported preclusive effect in the state proceedings." *Wright*, 2020 WL 8335672, at *7 (quoting *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004)).

notice, and administrative review procedures. She states Defendants Shelton, Thompkins, Williams, and Davis denied her these procedural safeguards and Defendant Boydston failed to correct such deficiencies before a court could rely on DHS's denial of Plaintiff for placement of L.W.

"To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The Tenth Circuit uses a "'two-step inquiry in determining whether an individual's procedural-due-process rights were violated: (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?'" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)) (brackets omitted).

Defendant argues Plaintiff lacks a protected liberty or property interest in being a foster care placement and thus has failed to allege a due process violation. Plaintiff contends she is not claiming a generalized right to foster placement but rather a state-created entitlement to the mandatory procedures of the kinship placement process.

"[W]hen state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protective liberty interest." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012) (citations omitted). "[T]he protected interests are substantive rights, not rights to procedure." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). "'Thus, an entitlement to nothing but procedure cannot be the basis for a liberty

10

or property interest.'" *Clark v. Okla. Pardon & Parole Bd.*, No. 21-6079, 2022 WL 130000, at *2 (10th Cir. Jan. 14, 2022) (unpublished) (quoting *Elliott*, 675 F.3d at 1245). Plaintiff herself admits she is not claiming a "unilateral expectation of placement" but rather an "entitlement to . . . required procedural safeguards." Plaintiff does not assert that she has a constitutional interest in becoming a foster parent, or that properly carried-out state kinship placement procedures would have mandated the placement of L.W. with her. She is asserting only a right to procedure, not a right to a particular substantive outcome. Accordingly, Plaintiff's claims against Defendants for violation of her 14th Amendment rights (Claim One) are therefore subject to dismissal under Rule 12(b)(6).

### b. Fourteenth-Amendment Stigma-Plus Due Process

Plaintiff asserts Defendants Shelton, Williams, and Davis committed a Stigma-Plus Due Process violation by relying on inaccurate criminal history information as a basis for denial of her consideration for kinship placement of L.W., and that the state court relied on this false report when denying her standing and placement consideration. Under the stigma-plus theory, "governmental defamation, coupled with an alteration in legal status, violates a liberty interest that triggers procedural due process protection." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011). To succeed on a stigma-plus claim, a plaintiff must show:

> (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law."

*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Paul v. Davis*, 424 U.S. 693, 710-11 (1976)).

But with respect to government defamation, "'intra-government dissemination [of a defamatory statement], by itself, falls short of the Supreme Court's notion of publication.'" *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 886 (10th Cir. 2012) (unpublished) (quoting *Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984)). To the extent Plaintiff asserts communication of the allegedly false report between DHS officials was defamatory, it simply cannot be considered published for Fourteenth Amendment purposes. *See Alcorn v. La Barge, WY*, 784 F. App'x 614, 619-20 (10th Cir. 2019) (unpublished) (finding internal communications of the same unit of government, such as a state, city, or agency, are not published for Fourteenth Amendment purposes, and applying such a rule to communications between a municipal government and a state agency or between units of government (e.g., between a city and county or a state and its sub-units)).

With respect to the filing of the written denial in the juvenile-deprived case, such a communication falls under Oklahoma's litigation privilege.[6] *See Springer v. Richardson Law Firm*, 239 P.3d 473, 475 (Okla. Civ. App. 2010) (quoting *Samson Inv. Co. v. Chevaillier*, 988 P.2d 327, 329-30 (Okla. 1999)) ("The 'litigation privilege' . . . 'accords attorneys, parties, jurors and witnesses immunity for comments or writings made *during* the course of or *preliminary* to judicial or quasi-judicial proceedings.' . . . It applies 'regardless of whether [the communications] are true or false.'"). Plaintiff represents that the DHS officials generated the report prior to and for the purpose of the juvenile-deprived

---

[6] Plaintiff does not dispute, and indeed does not address at all, Defendant's assertions that such a report is privileged.

proceedings in Stephens County District Court. It would thus appear such a report is privileged and cannot be considered defamatory for the purposes of Plaintiff's stigma-plus claim. Accordingly, and without persuasive argument or authority to the contrary, Plaintiff's stigma-plus due process claims (Claim Three) are DISMISSED.

### III.    First Amendment Retaliation

Plaintiff also alleges a First Amendment Retaliation claim against Defendants Williams and Davis.

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Id.* (quotations omitted).

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted). Plaintiff claims she was engaged in the constitutionally protected activity of petitioning the government for redress. *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). Plaintiff appears to claim her right to petition was violated by Defendants' continued refusal to provide her with procedural safeguards after she requested documentation and review of the placement denial.

"'The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives.'" *Nunley v. Goldey*, No. 23-6164, 2024 WL 2014307, at *2 (10th Cir. May 7, 2024) (unpublished) (quoting *Santa Fe All. for Pub.*

*Health & Safety v. City of Santa Fe*, 993 F.3d 802, 819 (10th Cir. 2021)) (internal quotation marks omitted). "But the Supreme Court has recognized that the First Amendment does not obligate the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances." *Id.* (citing *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979)). *See also HRH, LLC v. Teton Cnty.*, No. 18-CV-104-SWS, 2020 WL 13430352, at *4 (D. Wyo. Feb. 13, 2020) (noting the county did not prevent the plaintiff from filing a zoning application and stating the right to petition did not confer a right "to have the government expeditiously process or approve its application once filed"); *Santa Fe All.*, 993 F.3d at 819 (quotation omitted) ("But the text of the First Amendment does not speak in terms of successful petitioning—it speaks simply of the right of the people . . . to petition the Government for a redress of grievances."). Assuming Plaintiff's requests for documentation and review were petitions to the government, she has not asserted that she was prevented from filing these requests or airing these complaints, but only that despite those petitions, the Defendants continued to refuse to provide her the requested procedures. "[T]he case law uniformly rejects the contention that the First Amendment guarantees any success when petitioning," thus "rendering [Plaintiff's] claim frivolous." *Id.* (citation omitted). Accordingly, Plaintiff's First Amendment Retaliation claims are subject to dismissal under Rule 12(b)(6).

## IV.    Supervisory Liability

Plaintiff also brings a supervisory liability claim against Boydston, arguing he knew she had been denied procedural safeguards, could have directed corrective action, and yet failed to intervene, contributing directly to the alleged constitutional violations. "'To

impose § 1983 liability [on a supervisor,] the plaintiff first ha[s] to establish the supervisor's subordinates violated the [C]onstitution.'" *Burke v. Regalado*, 935 F.3d 960, 993-94 (10th Cir. 2019) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010)). As discussed above, Plaintiff has failed to plead any of Defendant Boydston's alleged subordinates violated either her First or Fourteenth Amendment rights. Accordingly, Plaintiff's supervisory liability claim against Defendant Boydston is subject to dismissal under Rule 12(b)(6).

## CONCLUSION

Accordingly, the Motions to Dismiss [Doc. Nos. 33, 34, 35, 36, 37] are GRANTED. This action is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 1st day of July, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE